UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

SMYTHE CRAMER CO.,
d/b/a HOWARD HANNA and
ADAM KAUFMAN

   Plaintiffs,

vs.

MICHAEL B. SILVA, JR. and
HELEN COLLEEN SILVA

   Defendants.

-------------------------------------------------------

CASE NO. 1:13-CV-01403

OPINION & ORDER
[Resolving Docs. No. 7 and 8].

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

  On August 26, 2013, Defendants Michael B. Silva Jr. and Helen Colleen Silva (collectively "Defendants") moved the Court to dismiss Plaintiffs Howard Hanna Smythe Cramer Co. and Adam Kaufman's (collectively "Plaintiffs") complaint against them. Plaintiffs' complaint raises claims of breach of contract, unjust enrichment, procuring cause, and fraud.[1/] Defendants say the Court should dismiss the entire complaint for failure to state a claim upon which the court can grant relief and lack of subject matter jurisdiction.[2/] For the following reasons, the Court **DENIES** the motion.

---

[1/] Doc. 1.
[2/] Doc 7-1.

Case No. 1:13-CV-01403
Gwin, J.

## I. Background

Plaintiffs Howard Hanna Smythe Cramer Co. ("Smythe Cramer"), a real estate brokerage firm, and Adam Kaufman ("Kaufman"), a real estate broker, entered into a listing contract with Defendants Michael B. Silva Jr. and Helen Colleen Silva.[3] Under the contract, Defendants granted the Plaintiffs the exclusive right to sell the Defendants' former residence ("the Silva Property"). The Exclusive Agreement began December 2, 2009 and expired November 27, 2010.[4]

The Exclusive Agreement contained a provision for a "Protection Period." The Protection Period ran from November 23, 2010 to May 24, 2011.[5] The Exclusive Agreement describes the Protection Period as follows:

> In the event the Property is sold or exchanged by Howard Hanna or by any other agent or person, including Seller, within six (6) months ("the Protection Period") after the Exclusive Period (or any extension thereof) has expired, to anyone to whom Howard Hanna or its cooperating brokers have shown, presented or submitted the Property and of whom Seller has notice, it is also agreed that Seller will pay the commission described above.[6]

While the Exclusive Agreement was still in effect, Plaintiffs say Kaufman brought potential buyers, the Ted and Catherine Biskind ("the Biskinds"), to Defendants and showed them the Silva Property.[7] In January 2011, and during the Protection Period, Defendants entered into a lease-purchase agreement with the Biskinds, giving the Biskinds, the option to purchase the Silva Property.[8] Defendants later sold the Silva Property to the Biskinds, but Defendants did not pay

---

[3] Doc. 6 at 1-3.
[4] *Id.* at 2.
[5] Doc. 1-1.
[6] *Id.*
[7] Doc. 6 at 2-3.
[8] *Id.* at 3.

Case No. 1:13-CV-01403
Gwin, J.

Plaintiffs' commission on the sale.[9]

On June 26, 2013, Plaintiffs filed a Complaint against Defendants alleging breach of contract, unjust enrichment, procuring cause, and fraud.[10] On August 26, 2013, Defendants filed the present motion to dismiss for failure to state a claim and lack of subject matter jurisdiction.[11] Plaintiffs oppose the motion.[12] The motion is ripe.

## II. Subject Matter Jurisdiction

### A. Legal Standard

The Defendants move to dismiss the Plaintiffs' First Amended Complaint because, they say, Plaintiffs fail to satisfy the amount in controversy requirement of 28 U.S.C. § 1332. In order for this Court to have subject matter jurisdiction under 28 U.S.C. § 1332 in a diversity case, there must be (1) complete diversity of citizenship and (2) the amount in controversy must exceed $75,000, exclusive of interest and costs.[13]

It is settled that "if a plaintiff brings an action in federal court and a defendant seeks dismissal on amount-in-controversy grounds, the case will not be dismissed unless it appears that the plaintiff's assertion of the amount in controversy was made in bad faith."[14] A showing of bad faith is made if the defendant demonstrates "to a legal certainty [] that the original claim was really for less than the

---

[9] *Id.*
[10] Doc. 1.
[11] Doc. 7.
[12] Doc. 8.
[13] 28 U.S.C. § 1332.
[14] *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008).

Case No. 1:13-CV-01403
Gwin, J.

amount-in-controversy requirement."[15]

**B. Analysis**

Here, Plaintiffs have made a good-faith claim that damages exceed $75,000. The parties' Exclusive Agreement set forth the amount of commission due.[16] In Plaintiffs' First Amended Complaint, Plaintiffs allege based on the sale price of the Silva Property, the commission due under the Exclusive Agreement exceeds $50,000.[17]

In addition, Plaintiffs seeks punitive damages with their fraud claim.[18] Punitive damages can be considered when determining the jurisdictional amount in controversy unless "it is apparent to a legal certainty that such cannot be recovered."[19] Moreover, contrary to what Defendants say, punitive damages are authorized in breach of contract case when fraud exists.[20] In Ohio to recover punitive damages the plaintiff "must establish not only the elements of the tort [*e.g.,* fraud] itself but, in addition, must either show that the fraud is aggravated by the existence of malice or ill will, or must demonstrate that the wrongdoing is particularly gross or egregious."[21] In Plaintiffs' First Amended Complaint, Plaintiffs plead Defendants knowingly, willfully, and fraudulently attempted to evade payment of commission due under terms of the Exclusive Agreement and egregiously, knowingly, and willfully misrepresented to the Plaintiffs they would pay Plaintiffs' commission

---

[15]*Id.*
[16]Doc. 1-1.
[17]Doc. 6 at 3.
[18]*Id.* at 6.
[19]*Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001).
[20]*Am. Indoor Soccer Ass'n, Inc., v. Capital Dist. Sports & Entm't, Inc.*, 64 F.3d 662 (6th Cir. 1995) (citing *Carrera v. Sandman*, 584 N.E.2d 753, 755, 65 Ohio App.3d 422, 426 (1989)).
[21]*Charles R. Combs Trucking, Inc. v. Int'l Harvester Co.*, 12 Ohio St. 3d 241, 466 N.E.2d 883, 885 (1984).

Case No. 1:13-CV-01403
Gwin, J.

outside of escrow.[22] Assuming the truth of these allegations, Plaintiffs have pled sufficient facts to seek punitive damages, even if punitive damages seem a long-shot. Therefore, Defendants have not demonstrated "to a legal certainty" that the Plaintiffs' claim was for less than the amount-in-controversy requirement, and the Court has subject matter jurisdiction over the current matter.

### III. Motion to Dismiss

**A. Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' "[23] The plausibility requirement is not a "probability requirement," but requires "more than a sheer possibility that the defendant has acted unlawfully."[24]

Federal Rule of Civil Procedure 8 provides the general standard of pleading and only requires that a complaint "contain ... a short plain statement of the claim showing that the pleader is entitled to relief."[25] "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."[26] In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[ ] veracity" of "well-pleaded factual allegations."[27]

---

[22] Doc. 6 at 5.
[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).
[24] *Id.*
[25] Fed.R.Civ.P. 8(a)(2).
[26] *Iqbal,* 556 U.S. at 678–79. (citations omitted).
[27] *Id.*

Case No. 1:13-CV-01403
Gwin, J.

**B. Analysis**

Because federal jurisdiction in this case is premised on diversity, the Court applies Ohio substantive law.[28] In resolving issues under Ohio law, the Court "look[s] to the final decisions of [Ohio's] highest court, and, if there are no decisions directly on point," this Court must make "an *Erie* guess to determine how that court, if presented with the issue, would resolve it."[29] In making this determination, "[i]ntermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently."[30]

**1. Breach of Contract**

A claim for breach of contract under Ohio law requires that a claimant prove: (1) a contract's existence; (2) plaintiff's performance under the contract; (3) defendant's failure to perform under the contract; and (4) damages resulting from defendant's failed performance.[31] Defendants do not dispute that the Exclusive Agreement existed and it was a valid contract until its expiration.[32] Rather Defendants say that Plaintiffs have not sufficiently pled that they performed under that contract.[33] Specifically, Defendants say Plaintiffs have failed to allege they effectuated a sale or exchange of the Silva Property within the Exclusive Period or the Protection Period as required by the contract.[34]

The Court disagrees. Under Ohio law a residential lease is considered a "sale of an interest

---

[28] *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir.2008) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
[29] *Conlin v. Mortgage Elec. Registration Sys., Inc.*, 714 F.3d 355, 358-59 (6th Cir. 2013).
[30] *Id.* (quoting *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir.2008)).
[31] *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008).
[32] Doc. 7-1.
[33] *Id.* at 4.
[34] *Id.* at 5-6.

-6-

Case No. 1:13-CV-01403
Gwin, J.

in real estate."[35] Here, Plaintiffs have alleged Defendants entered into a lease-purchase agreement during the Protection Period and the Defendants sold the property under this lease-purchase agreement.[36] Therefore, the Court finds the Plaintiffs have pled sufficient facts to state a claim for breach of contract.

**2. Unjust Enrichment**

Unjust enrichment arises out of a contract implied in law.[37] A "contract implied in law" is a quasi-contract implied by a court when a party "retains money or benefits which in justice and equity belong to another."[38] A claim for unjust enrichment is established when there is: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment')."[39]

Ohio law does not permit the recovery under the theory of unjust enrichment when an express contract covers the same subject.[40] However, unjust enrichment can be pled despite the existence of an express contract where there is evidence of fraud or bad faith.[41] Here Plaintiffs allege Defendants knowingly, willfully, and fraudulently attempted to evade the terms of the Exclusive Agreement and egregiously, knowingly, and willfully misrepresented to Plaintiffs they would pay

---

[35]/*Heritage Hills, Ltd. v. Deacon (1990)*, 49 Ohio St.3d 80, 82, 551 N.E.2d 125; *Brenner v. Spiegle*, 116 Ohio St. 631, 157 N.E. 491 (1927).
[36]/Doc. 6 at 3.
[37]/*Hummel v. Hummel*, 133 Ohio St. 520, 525, 14 N.E.2d 923, 926 (1938).
[38]/*Id.* at 927.
[39]/*Johnson v. Microsoft Corp.*, 2005-Ohio-4985, 106 Ohio St. 3d 278, 286, 834 N.E.2d 791, 799 (2005) (quoting *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 12 OBR 246, 465 N.E.2d 1298).
[40]/*Ullmann v. May*, 147 Ohio St. 468, 72 N.E.2d 63 (1947).
[41]/*S & M Constructors, Inc. v. City of Columbus*, 24 O.O.3d 145, 434 N.E.2d 1349, 1351 (1982); *Ullmann v. May*, 147 Ohio St. 468, 72 N.E.2d 63 (1947).

Case No. 1:13-CV-01403
Gwin, J.

Plaintiffs' commission outside of escrow.[42] Since the Plaintiffs here allege fraud, the Court finds Plaintiffs are able to state a claim for unjust enrichment.

**3. Procuring Cause**

The procuring cause doctrine is an equitable tool which permits a broker to recover a commission for the sale of property in the absence of a contract.[43] Procuring cause "refers to a cause directly originating a series of events which without break in their continuity directly result in the accomplishment of the prime objective of the employment of the broker, namely, the producing of a purchaser ready, willing and able to buy real estate on the owner's terms."[44]

Here, Plaintiffs have stated sufficient facts to show there was no break in continuity of the series of events leading to Plaintiffs' procurement of a ready, willing, and able buyer. Plaintiffs say that while the Exclusive Agreement was in effect Kaufman introduced the Biskinds to the Defendants and showed them the Silva Property.[45] Plaintiffs further say Defendants then entered into a lease-purchase agreement with the Biskinds during the Protective Period,[46] and the Defendants sold their residence to the Biskinds under that lease-purchase agreement.[47]

Both *Upper Valley Realty, Inc. v. Hanson*[48] and *Bergman Group v. OSI Dev., LTD*,[49] relied on by the Defendants are distinguishable from the present case. In *Hanson*, the court found that appellant did not procure a ready, willing, and able buyer within the terms of the contract because

---

[42] Doc. 6 at 5.
[43] *Bergman Grp. v. OSI Dev., LTD*, 2010-Ohio-3259 (Ohio Ct. App. July 12, 2010).
[44] *Bauman v. Worley*, 166 Ohio St. 471, 143 N.E.2d 820, 821 (1957).
[45] Doc. 6 at 3.
[46] *Id.*
[47] *Id.*
[48] *Upper Valley Realty, Inc. v. Hanson*, 2006-Ohio-314 (Ohio Ct. App. Jan. 20, 2006).
[49] *Bergman Grp. v. OSI Dev., LTD*, 2010-Ohio-3259 (Ohio Ct. App. July 12, 2010).

Case No. 1:13-CV-01403
Gwin, J.

appellant did not show the buyer the property until after the contract expired and appellant was not even involved in the final sale.[50] In *Bergman,* the court found there was a break in continuity in the two-year period between the expiration of the listing contract and the signing of the purchase agreement because the realtor no longer represented the seller at the time of the sale.[51] Moreover, both in *Hanson* and *Bergman*, the court noted the fact that the sale of the property did not occur until after the lease expired.[52] In contrast, recall in the present case Plaintiffs say they showed the Biskinds the Silva Property while the Exclusive Agreement was in effect[53] and the Biskinds entered the lease-purchase agreement during the Protective Period.[54] Recall also that unlike *Hanson* and *Bergman* the Biskinds exercised their option to purchase Defendants' property prior to the lease's expiration.[55] This case is different from *Hanson* and *Bergman*.

**4. Fraud**

To meet the pleading requirements for a fraud claim under Ohio law, a plaintiff must allege with particularity: "(1) a representation (or concealment of a fact when there is a duty to disclose) (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance."[56]

Defendants say Plaintiffs are not permitted to plea fraud because "Ohio law bars fraud and

---

[50] *Hanson*, 2006-Ohio-314 (Ohio Ct. App. Jan. 20, 2006).
[51] *Bergman*, 2010-Ohio-3259 (Ohio Ct. App. July 12, 2010).
[52] *Id.*
[53] Doc. 6 at 3.
[54] *Id.*
[55] *Id.*
[56] *Volbers-Klarich v. Middletown Mgt., Inc.*, 2010-Ohio-2057, 125 Ohio St. 3d 494, 501, 929 N.E.2d 434, 440 (2010).

-9-

Case No. 1:13-CV-01403
Gwin, J.

other tort claims that arise from the same circumstances as breach of contract claim."[57] However, under rules of pleading, a plaintiff can pursue two or more theories of recovery in the alternative and "regardless of consistency."[58] Therefore, while Plaintiffs cannot recover on both breach of contract and fraud claims, they can plead fraud in the alternative.

### IV. Conclusion

For the reasons set forth above, the Court **DENIES** Defendants' motion to dismiss.

IT IS SO ORDERED.


Dated: October 22, 2013                    s/      *James S. Gwin*
                                           JAMES S. GWIN
                                           UNITED STATES DISTRICT JUDGE

---

[57] Doc. 7-1 at 10.
[58] Fed. R. Civ. P. 8(d).